1

2

3

4                                                              **E-FILED on**   11/21/05

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                      SAN JOSE DIVISION

11

12    SONISTA, INC.,                            No. C-04-04080 RMW

13                    Plaintiff,                **ORDER GRANTING IN PART AND
                                                DENYING IN PART CROSS-MOTIONS FOR**
14             v.                               **SUMMARY JUDGMENT**

15    DAVID HSIEH, TECHPAC, INC., and PIXA,     **[Re Docket Nos. 85, 89, 99, 107, 113, 120,**
      INC.,                                     **125]**
16
                      Defendants.
17

18

19

20
              Plaintiff Sonista, Inc., and defendant Pixa, Inc., each move for summary judgment.  The motions
21
      relate to Sonista's trademark infringement claims against all defendants and its breach of fiduciary duty
22
      claims against defendant David Hsieh.  For the reasons below, the court grants Sonista's motion in part and
23
      otherwise denies the motions.
24
                                      **I.  BACKGROUND**
25
              The following facts are uncontroverted.  In 2003, David Hsieh was a director, shareholder, and
26
      officer of plaintiff Sonista, Inc.  During this time, he began setting up a company that eventually became
27
      defendant Pixa, Inc.  Hsieh negotiated the sale of the mark DVONE from Sonista to defendant Techpac,
28

Inc.  Techpac was then (and still is) wholly owned by Mei-Hui Lee, who is Hsieh's wife.  Techpac licensed the DVONE mark to Pixa.  Hsieh resigned as an officer of Sonista in March 2004.  In September 2004, Sonista filed suit against Hsieh, Techpac, and Pixa to recover the DVONE mark and damages for trademark infringement and breach of fiduciary duty.

Currently before the court are cross-motions for summary judgment.  Sonista moves for summary judgment on its breach of fiduciary duty claim against Hsieh and its infringement claims against the defendants.  Sonista also seeks summary adjudication that Hsieh's breach of fiduciary duty and the defendants' infringement were all willful.  Pixa moves for summary adjudication that it is protected from infringement as a *bona fide* purchaser.  Obviously, these motions cannot be all granted in their entireties.

## II.  ANALYSIS

### A.  Summary judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCivP 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.*  A party moving for summary judgment who does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

### B.  Breach of fiduciary duty

To prove a claim for breach of fiduciary duty, a party must show "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995).  Sonista is a corporation created under the laws of California.  California law requires a director to generally perform his corporate duties "in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."  Cal. Corp. Code § 309(a).  A director who adheres to this standard "shall have no

1  liability based upon any alleged failure to discharge the person's obligations as a director," *id.* § 309(c); this

2  is California's codification of the business judgment rule.

3      A different standard applies to transactions in which a director has an interest other than his

4  corporation's interest.  A transaction "in which one or more . . . directors [have] a material financial interest"

5  can be ratified by the corporation in one of three ways:  (1) The interested director discloses all material

6  facts to the shareholders, and the disinterested shareholders approve the transaction; (2) the interested

7  director discloses all material facts to the board or appropriate committee of the board, and the

8  disinterested members of the board or appropriate committee approve the transaction and the transaction

9  "is just and reasonable as to the corporation at the time it is authorized;" or (3) "the person asserting the

10 validity of the contract or transaction sustains the burden of proving that the contract or transaction was just

11 and reasonable as to the corporation at the time it was authorized, approved or ratified."  *Id.* § 310(a).

12     **1.  Transfer of the DVONE mark**

13     It is not disputed that Hsieh was a director at the time of the DVONE mark transfer.  Hsieh, as a

14 director of Sonista, had a duty of "good faith" and had to act "in the best interests of the corporation and its

15 shareholders."  *Id.* § 309(a).  The first element of a claim for breach of fiduciary duty, the existence of a

16 duty, has been proven by uncontradicted evidence.

17     Lee is the sole shareholder of Techpac, which was incorporated during Lee and Hsieh's marriage.

18 Under California community property law, the stock, which was acquired during marriage, is presumptively

19 community property.  *See In re Marriage of Haines*, 33 Cal. App. 4th 277, 291 (1995); Cal. Fam. Code

20 § 760.  Hsieh therefore owns half of the Techpac stock, and has a substantial interest in Techpac.  *See* Cal.

21 Fam. Code § 751 ("The respective interests of the husband and wife in community property during

22 continuance of the marriage relation are present, existing, and equal interests."); *d'Elia v. d'Elia*, 58 Cal.

23 App. 4th 415, 423 ("When stock is community property, each spouse has an equal interest in it, regardless

24 of who is the holder of record.").  The transfer of the DVONE mark from Sonista to to Techpac was a

25

26

27

28

ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-04-04080
RMW
JAH                 3

1  transaction in which Hsieh had a "material financial interest."  The business judgment rule of § 309 thus

2  cannot protect Hsieh;[1] the transaction is instead scrutinized using § 310.

3          There is no evidence that Hsieh's transfer of the DVONE mark was ratified by either disinterested

4  directors or shareholders; there are declarations that the transfer was unauthorized.  *See* 2d Hallam Decl. in

5  Supp. of Prelim. Inj. ¶¶ 2-3 (stating that Hsieh was never authorized to sell Sonista's intellectual property

6  assets and Sonista's board of directors never approved the sale of the DVONE mark); Liou Decl. in Supp.

7  of Prelim. Inj. ¶¶ 5-6 (same).  Hsieh's declaration does not create an issue of material fact regarding

8  § 310(a)(1) or (2).  Hsieh stated that his "superiors at Eastech were demanding that [he] begin selling

9  Sonista assets" in 2003.  Hsieh Decl. in Opp'n to Mot. for Prelim. Inj. ¶ 4.  If this is true and the directive

10 covered the DVONE mark, he could have disposed of the DVONE mark in a sale to any entity in which

11 he lacked a material interest, and this court would have analyzed the transaction using the business judgment

12 rule.  Hsieh, though, chose to sell the mark to Techpac, which his wife owned, making the sale one in which

13 he had a material interest.  Hsieh cannot claim the protections of § 310(a)(1) or (2).

14         Hsieh's only escape from a breach of fiduciary duty for the DVONE mark transfer is to "prov[e]

15 that the contract or transaction was just and reasonable as to the corporation at the time it was authorized,

16 approved or ratified."  *See* Cal. Corp. Code § 310(a)(3).  Hsieh has produced no admissible evidence that

17 this was the case aside from his declaration that he "believe[s] that the price paid by Techpac was fair and

18 reasonable under the circumstances."  Hsieh Decl. in Opp'n to Mot. for Prelim. Inj. ¶ 4.  In its motion for

19 summary judgment, Sonista alleges that it "has sold over $1,000,000 worth of products" under the

20 DVONE mark but points to no evidence that supports the allegation.  Sonista's Mot. for Summ. J. at 8.

21 This court cannot say as a matter of law that the $1,000 price for the DVONE mark was not "just and

22 reasonable" to Sonista given the disputed factual allegations as to the state of Sonista's business in 2003 and

23

24 ─────────────────

25         [1]     Hsieh cites *GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83
   Cal. App. 4th 409 (2000), and *Katz v. Chevron Corp.*, 22 Cal. App. 4th 1352 (1994), for the
26 proposition that he is protected by the business judgment rule.  Those cases are inapplicable.  *GAB*
   involved whether a corporate vice president was liable as an officer.  83 Cal. App. 4th at 416-25.
27 California Corporations Code sections 309 and 310, upon which this court is analyzing Hsieh's fiduciary
   duties, deal with director, not officer, liability.  *Katz* involved a Delaware corporation and so analyzed
28 director liability under Delaware law.  22 Cal. App. 4th at 1359 n.4, 1366-76.  Sonista is a California
   corporation, so California law applies.

1   2004 and the fact that Sonista has produced no evidence to counter Hsieh's declaration.  Summary

2   adjudication that Hsieh breached a duty to Sonista is thus inappropriate.

3         The parties have both submitted expert reports regarding damages.  As one might expect, each

4   expert report favors the party or parties hiring that expert.  Sonista's expert, Drew Voth, asserts that

5   Sonista's damages are "in excess of $1.9 million."  Voth Decl. in Supp. of Sonista's Mot. for Summ. J.

6   ("Voth Decl.") ¶ 4, while Pixa and Techpac's expert, Stephen Degnan, claims that Sonista's expert "has not

7   established with any reasonable probability that Sonista, Inc. has lost profits in excess of $1.9 million or in

8   any amount," Degnan Decl. in Supp. of Opp'n to Sonista's Mot. for Summ. J. ¶ 4.  (These expert

9   declarations have been provided to the court, but the underlying reports do not appear to have been.)  The

10  corporate defendants claim there is a disputed issue of material fact regarding damages, making summary

11  judgment inappropriate.

12        Technically, Sonista has produced evidence of damages, while the corporate defendants have

13  produced a declaration that Sonista's evidence is speculative, but no actual evidence of Sonista's damages

14  or lack thereof.  The Degnan declaration contains statements more akin to legal conclusions than factual

15  findings.  It is insufficient "for the nonmovant simply to attack the credibility of the movant's affiants without

16  a supporting factual showing."  William W. Schwarzer *et al*, *The Analysis and Decision of Summary*

17  *Judgment Motions: A Monograph on Rule 56 of the Federal Rules of Civil Procedure* 47 (1991).  The

18  court need not decide, though, whether the defendants' expert's declaration constitutes evidence sufficient

19  to prevent summary judgment.

20        Sonista has not produced evidence that compels the conclusion that the transfer of the DVONE

21  mark caused Sonista any damage.  In his declaration, Voth stated that "Sonista has sustained quantifiable

22  damage as a result of David Hsieh's breaches of fiduciary duty and also as a result of Defendants'

23  trademark infringement in an amount in excess of $1.9 million."  Voth Decl. ¶ 4.  Voth did not specify how

24  much (if any) of this amount was due to Hsieh's breaches and how much (if any) was due to the defendants'

25  infringement.  Since the Voth declaration does not provide any estimate of the damages Hsieh caused by

26  transferring the DVONE mark to Techpac, there is no evidence of the damages this particular action

27  caused Sonista.  It would therefore be inappropriate for the court to grant Sonista summary judgment on

28  this element of its cause of action for breach of fiduciary duty.

1    The court will grant Sonista summary adjudication as to the first element of its breach-of-fiduciary-

2    duty claim against Hsieh, that Hsieh owed Sonista a duty.  The issue of damages and whether Hsieh can

3    prove the transfer was "just and reasonable" to Sonista cannot be resolved on Sonista's motion for

4    summary judgment.

5         **2. Creation of Pixa**

6         As discussed above, the parties do not dispute that Hsieh was a director of Sonista in 2003 and

7    2004.  As above, the first element of a claim for breach of fiduciary duty, the existence of a duty Hsieh

8    owed Sonista, has been adequately shown.

9         The court must decide if the steps Hsieh took assisting in the creation of Pixa are, as a matter of

10   law, a breach of his fiduciary duties to Sonista, and if this breach is shown by uncontested evidence.

11   Sonista offers the declaration of Pixa CEO David Wu for the proposition that Sonista and Pixa are

12   competitors.  Wu admitted that both companies were in the "consumer electronics" industry, but declined to

13   describe them as rivals or not rivals and stated that he did not know if they shared any customers.  Stewart

14   Decl. in Supp. of Sonista's Mot. for Summ. J., Ex. 11 (Wu Decl.) at 37:5-23.  At a time when all three

15   defendants were represented by the same counsel, the defendants described Sonista and Pixa as rivals.

16   *See* Opp'n to Sonista's Mot. to Compel at 9:10-11 ("The filing of a lawsuit does not constitute *catre*

17   *blanche* access to a rival's innermost workings.  Yet that is exactly what Sonista seeks to obtain from Pixa

18   here.").  Pixa and Sonista both sold DVONE-branded products, albeit at different times.  Hsieh has offered

19   no evidence that Pixa and Sonista are not rivals, and the court will therefore consider the companies rivals.

20        Assisting in the creation of a rival to Sonista while still a Sonista director and officer would be a

21   clear-cut violation of Hsieh's fiduciary duties to Sonista.  Sonista offers the following

22

23

24

25

26

27

28

1   information to support its contention that Hsieh worked to incorporate Pixa before he resigned his position

2   as an officer of Sonista in March 2004:

3       1.    Pixa's articles of incorporation list Hsieh's home address as the address of Pixa's principal

4             executive office and all officers and directors.  Stewart Decl. in Supp. of Sonista's Mot. for

5             Summ. J., Ex. 5 at 1.

6       2.    Hsieh sent an e-mail suggesting the name "Pixa" on August 5, 2003.  Krone Decl., Ex. 4.

7       3.    On September 4, 2003, Hsieh sent an e-mail message with a list of to-do items, including

8             "Pixa need to be up and running at Oct-01,2003," "TP/Pixa agreement first draft," "DVOne

9             logo status at US/European," and "2004 CES show."  Krone decl., Ex. 6.

10      4.    Hsieh sent an e-mail message from his Sonista e-mail address to Jack Peng stating "we jsut

11            send out the status of you though our AOL account, Be nice please tempory not send the

12            e-mail to this account, you know I will get kill !!!"  *Id*., Ex. 7.

13      5.    Hsieh e-mailed Marc Barkdull in October 2003 about leasing office space for Pixa.  *Id*.,

14            Ex. 8.

15      6.    Hsieh e-mailed Xavier Unamun in October 2003 about a logo for Pixa.  *Id*., Ex. 9.

16            Unaman e-mailed Hsieh the final version of the Pixa logo a month later.  *Id*., Ex. 14.

17      7.    On November 3, 2003, Ted Moshos e-mailed Hsieh regarding a meeting with Cynthia

18            Chan, a "DVD buyer."  *Id.*, Ex. 10 at 1.  Moshos stated that "I didn't send her the

19            company profile because it says SONISTA and I didn't know if that's what you want.

20            Please send her the correct information that you want her to see."  *Id*.  Hsieh responded

21            that he would "figure out how to present it."  *Id*.

22      8.    On November 6, 2003, Hsieh e-mailed a to-do list that included lists of tasks for "David

23            H," "Jimmy/Marysa," "David W," and "Xavier, DH."  *Id*., Ex. 11.

24      9.    Around November 17, 2003, Hsieh changed the signature block of his Sonista e-mail

25            account, listing his company as "Pixa Inc." instead of "Sonista Inc.," as it had been formerly.

26            *Compare id.*, Ex. 12, *with id*., Ex. 11.

27      10.    On November 17, 2003, Hsieh sent from his Sonista e-mail address an e-mail with the

28            subject line "DvOne new contact phone #."  Krone Decl., Ex. 13.  This e-mail was

1      addressed to several addresses at the domain "ephog.de" and contained a postal address

2      and several phone numbers for "Pixa, Inc."  *Id*.

3      11.      On November 20, 2003, Dell Inc. sent Hsieh an e-mail confirming an order for a

4      computer, which Dell was to bill to Hsieh at "Pixa Inc" at his home address and ship to

5      Hsieh at Pixa's business address.  *Id*., Ex. 15 at 1.

6      12.      On December 2, 2003, Hsieh e-mailed Unamun a profile of Pixa that was based on

7      Sonista's profile.  *Compare id.*, Ex. 17, *with id*., Ex. 16.

8      13.      On December 2, 2003, Nancy Tam e-mailed Hsieh a suggested plan of action for

9      "generating awareness among retailers and media about the PIXA and DVONE brands

10      and products" at the January 2004 Consumer Electronics Show.  Krone Decl., Ex. 18.

11     Hsieh offers no evidence that contradicts the above items, which are largely based upon e-mails recovered

12     by Sonista's forensic computer expert, Winston Krone, from Hsieh's Sonista laptop.  Hsieh merely argues

13     that "the mere presence of these e-mails on the hard drive of the computer cannot establish that any material

14     fact is undisputed."  This is true, but Hsieh's failure to present any contradictory evidence leaves this e-mail

15     evidence uncontroverted.  There is no dispute of material fact that Hsieh worked to help set up Pixa while

16     he was still a director and officer of Sonista.

17           Hsieh argues that his higher-ups had undertaken restructuring that would eliminate or redirect

18     Sonista and that he was instructed to sell off corporate assets, but this could not make it in Sonista's best

19     interest for Hsieh to work to set up Pixa.[2]  Hsieh's fiduciary duty as an officer continued until he resigned in

20     March 2004, and his fiduciary duty as a director continues to this day.  Regarding the creation of Pixa,

21     there is no dispute of material fact as to the second element of a claim for breach of fiduciary duty, the

22     breach of a duty Hsieh owed Sonista.

23           The only evidence of Sonista's damages arising from the creation of Pixa is contained in the parties'

24     conflicting expert witness declarations.  As above, the issue of damages cannot be resolved on a motion for

25

26

27      [2]     It is thus unnecessary for the court to address the admissibility of the evidence upon which
        Hsieh relies for this proposition, or address Sonista's assertion that one of the e-mails upon which Hsieh
28      relies is "a forgery."

ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-04-04080
RMW
JAH                                                                       8

1   summary judgment because the Voth declaration is not specific enough; it does not compel the conclusion

2   that Sonista suffered any damage from Hsieh's actions to set up Pixa.

3          The court will grant Sonista summary adjudication as to the first two elements of its breach-of-

4   fiduciary-duty claim against Hsieh for his hand in Pixa's creation: the existence and breach of a duty.  The

5   issue of damages cannot be resolved on Sonista's motion for summary judgment.

6          **3.  Willfulness**

7          Sonista seeks summary adjudication that Hsieh's breaches of fiduciary duty were willful.  Willfulness

8   is a legal term of art and has different meanings in different settings.  Sonista's motion does not indicate the

9   context in which it seeks to have Hsieh's conduct ruled willful.  The only law Sonista offers supporting its

10  case for willfulness is a district court case from the Northern District of Illinois.  Sonista has not shown that

11  it is entitled as a matter of law to a declaration that Hsieh's breach of fiduciary duty was willful, and this

12  portion of Sonista's motion will therefore be denied.

13  **C.  Trademark infringement**

14         Sonista moves for summary judgment that the defendants infringed the DVONE mark,[3] but Sonista

15  does not specify which of the three defendants have infringed the mark.  As the three defendants would

16  have very different bases of liability for any infringement of the DVONE mark, it would be difficult for this

17  court to rule that Sonista had shown that it was entitled to judgment as a matter of law.  Sonista mainly

18  analyzes the likelihood of confusion under the *Sleekcraft* factors (from *AMF Inc. v. Sleekcraft Boats*, 599

19  F.2d 341, 348-49 (9th Cir. 1979)).  Also, as Hsieh points out, Sonista's complaint contains claims for

20  trademark infringement under sections 32(1) and 43(a)(1)(A) of the Lanham Act and California Business

21  and Professions Code § 14335, yet Sonista's motion for summary judgment does not specify on which of

22  these causes of action Sonista seeks summary judgment.  (The reasonable assumption is that Sonista seeks

23  summary judgment on its cause of action under section 32(1) of the Lanham Act.)

24         Sonista's motion, though, is flawed for another reason:  Sonista has jumped the gun.  To assert a

25  claim for trademark infringement, a plaintiff must own or have exclusive rights to the mark.  The Lanham

26  _____

27         [3]      "Although disfavored in trademark infringement cases, summary judgment may be entered
     when no genuine issue of material fact exists."  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625,
28   630 (9th Cir. 2005).

1  Act "grants standing to assert a claim for trademark infringement solely to the 'registrant.'"  *Berni v. Int'l*

2  *Gourmet Rests. of Am., Inc*., 838 F.2d 642, 645-46 (2d Cir. 1988) (citing 15 U.S.C. § 1114(1)).  The

3  term "registrant" includes the registrant and his "'legal representatives, predecessors, successors and

4  assigns.'"  *Id.* (quoting 15 U.S.C. § 1127).  Sonista has not addressed this issue.

5  The ownership of the DVONE mark is still an open question; Sonista in its complaint admitted that

6  Hsieh transferred the mark, Compl. ¶ 76, and Sonista seeks to void that transfer, *id.* ¶ 85.  Sonista has

7  produced a copy of its federal registration of the DVONE mark, *see* 2d Stewart Decl. in Support of

8  Sonista's Mot. for Summ. J., Ex. 2, and evidence that Sonista was still the owner of record on September

9  26, 2005, *id*., Ex. 6.  The corporate defendants have produced the assignment agreement between Sonista

10  and Techpac and evidence that the assignment was recorded at the U.S. Patent and Trademark Office.

11  *See* Evid. in Supp. of Pixa's Mot. for Summ. J., Exs. 1-3.  When granting Sonista's motion for a preliminary

12  injunction, the court stated that "the court is convinced there is a strong possibility that the transfer of the

13  DVONE mark to Techpac is invalid and voidable, making Sonista the owner of the mark."  Sonista,

14  though, has neglected to follow up on this matter; presumably, Techpac is still the legal owner of the mark

15  (though unable to make use of it.)  A ruling on infringement by any defendant would be premature because

16  it is not clear that Sonista is entitled to such a ruling as a matter of law.

17  Since the court will deny Sonista's motion for summary judgment on its infringement claims, the

18  court will also deny the portion of its motion seeking a declaration that the infringement was willful.  The

19  court also notes that it has the same concerns about the vagueness of this request that it did regarding

20  Sonista's request to declare Hsieh's breaches of fiduciary duty willful.[4]

21  **D.  Pixa's status as a *bona fide* purchaser**

22  Pixa moves for an order declaring it protected from Sonista's infringement claims because Pixa, as a

23  licensee of the DVONE mark from Techpac, was a "bona fide purchaser."  As Sonista correctly points out,

24  none of the cases Pixa relies on in its motion support the proposition that a licensee can be protected as a

25  *bona fide* purchaser.  Pixa only licensed—it did not purchase—rights to the DVONE mark from Techpac.

---

[4]  Sonista has requested that the court not deny it summary judgment against Hsieh until after it has deposed Hsieh.  Sonista's Reply in Supp. of its Mot. for Summ. J. Against Hsieh at 9.  The court does not see how the deposition of Hsieh could entitle Sonista to summary judgment on its breach-of-fiduciary-duty or infringement claims and therefore denies this request.

1   Pixa claims it is protected by California Civil Code section 3543, which states that "[w]here one of

2   two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the

3   sufferer."  There is evidence that the actions of Hsieh, who was instrumental in setting up Pixa, can be

4   imputed to Pixa.  Pixa is not clearly an innocent party here.  Pixa has not shown that it is entitled to

5   judgment as a matter of law, and its motion will be denied.

6                                    **III.  ORDER**

7        For the foregoing reasons, the court grants Sonista's motion for summary judgment as follows:

8        1.      Sonista is entitled to summary adjudication that Hsieh owed it a fiduciary duty;

9        2.      Sonista is entitled to summary adjudication that Hsieh breached his fiduciary duties to

10               Sonista by working to set up Pixa.

11  Sonista's motion for summary judgment is otherwise denied.  Pixa's motion for summary judgment is

12  denied.

13

14

15  DATED:       11/21/05                              /s/ Ronald M. Whyte
16                                                RONALD M. WHYTE
                                                  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff:**

3

4

| | |
|---|---|
| Diane J. Mason | mason.diane@dorsey.com |
| David J. Brezner | brezner.david@dorsey.com |
| Douglas F. Stewart | stewart.douglas@dorsey.com |
| Peter Ehrlichman | Ehrlichman.Peter@dorsey.com |
| Brian W. Grimm | |
| Brian C. Park | |
| Jason Rhodes | rhodes.jason@dorsey.com |
| Steven D. Allison | |

5

6

7

8

**Counsel for Defendants:**

9

10

| | |
|---|---|
| John McIntyre, Jr. | jmcintyre@popelka.com |
| Todd A. Roberts | troberts@ropers.com |
| Chi-Hung A. Chan | golawyer@attygo.com |
| Dean A. Pappas | dpappas@ropers.com |

11

12

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

13

14

15

16

**Dated:**        11/21/05                              /s/ JH
                                              **Chambers of Judge Whyte**

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-04-04080 RMW
JAH